LOCKMAN *v*. ALABAMA & V. RY. CO.

[77 South. 793, Division A.]

1. MASTER AND SERVANT. *Question for jury. Application of fellow servants' doctrine. Laws* 1908, *chapter* 194. *Hemingway's Code, section* 6684.

   Where an employee of a railroad company while employed in loading rails upon a flat car was injured because some of his fellow servants gave an unusual or sudden jerk to the rail which they

. were lifting to place upon the car which caused it to fall and injure his leg and there was no evidence as to why such sudden and unusual jerk was given in such case a peremptory instruction for the defendant was erroneous.

2. SAME.

In such case the jury would have been warranted in finding that plaintiff was injured because of the negligence of a fellow servant while engaged in loading a car for transportation over defendant's railroad so that the case would fall within chapter 194, Laws 1908 (Hemingway's Code, section 6684), giving railroad employees the same rights and remedies for injuries caused by an act or omission of the railroad company as are allowed by laws to other persons not so employed.

3. SAME.

In such case where there was no evidence that an engine was attached to the car at the time it was being loaded or that it was to be moved by steam, gas, gasoline, or lever power, the presumption arises that it was to be moved by the railroad ·company's usual motive power.

APPEAL from the circuit court of Rankin county. Hon. J. D. CARR, Judge.

Suit by Philip Lockman, against the Alabama & Vicksburg Railway Company. From a judgment on a peremptory instruction for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*S. L. McLaurin* and *Robert Powell,* for appellant.

The learned counsel for appellee with his usual candor practically admits that the evidence in this case makes out a *prima-facie* case of negligence, but he seeks to avoid liability on the ground that the negligence shown was that of a fellow servant. To this we reply. The Acts of 1908, chapter 194, which reads as follows: Fellow servant rule abolished as to actions by railroad employees, etc. Section 1. Every employee of a railroad corporation, and all other corporations and individuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever

power, and running on tracks, shall have the same rights and remedies for an injury suffered by him from the act or omission of such railroad corporation or others of their employees as are allowed by law to other persons not so employed.

But our learned friend replies that this does not protect us because, "we were not engaged in a labor peculiarly incident to the railroad business nor inherently dangerous and had no connection whatever with the operation of railroad locomotives, car or trains.

Now while we think the gentleman entirely too narrow in his construction of the scope of this statute, we will still meet him on his own ground. At the time of the accident plaintiff was an employee of the defendant railroad company, and was engaged as a section hand in tearing up a part of its sidetrack and in loading the iron rails on the company's flat car for transportation to other points.

We ask then is not the removing and shipping of iron rails from one point on the railroad to another and loading of railroad cars for transportation, connected with the operation of railroad locomotives, cars or trains?

How could locomotives or cars run if the rails were not laid and properly kept in repair? or what use for cars or trains to run if not loaded? But my friend says that loading cars with iron rails is not inherently dangerous.

Our supreme court in the case of *Hunter* v. *Ingram-Day Lumber Co.,* 110 Miss. 748 says: "The defendant company, by whom the plaintiff was employed owned and operated the railroad in question. This railroad was equipped with engines and cars propelled by steam and running on tracks, and in so far as the equipment is concerned it is certain that appellant's employer's outfit was such as is contemplated by the statute. The entire system that appellee had in operation at the time the appellant was injured was an arrangement to load

cars that were propelled by steam and run on tracks and the plaintiff at the time of his injury was engaged in loading one of appellant's cars on the railroad in question. It is not necessary in order for a person to recover under the terms of the Fellow Servants' Statute of 1908, that such person be injured by the actual running or movement of the cars, the legislature, acting within its discretion, has determined that all persons working in and about the operation of railroad trains are engaged in a hazardous business and are entitled to the protection afforded by the statute in question. All work in and around the operation of railroad trains is necessarily dangerous, whether that work has to do with the movement of cars or the loading of same or any other employment in the operating department of a railroad.''

But why gild refined gold or paint the lily? We refer the .court to two decisions of this court which cover every point in appellee's brief and decide adversely to his contention, to-wit: *Easterling Lumber Co.* v. *S. W. Pierce,* 106 Miss. 744, in which the court will find the matter exhaustively treated with numerous citations from the United States supreme court and other states in which section 193 of the Constitution and the subsequent acts and decisions construing them are fully discussed.

We think the case should be reversed and remanded for a new trial.

*R. H. & J. H. Thompson,* for appellee.

The kindly terms in which appellant's reply brief affirms that we have practically admitted that the testimony made out a *prima-facie* case of negligence are appreciated, but appellant's counsel failed to note that whatever admission of the kind can be inferred from our language was made only by way of argument, our contention having been that, should the court find

that the negligence of the railway company had been
proved even *prima-facie,* still plaintiff is not entitled
to a recovery. If the language of our brief be broader
than this it was inadvertently made so.

We insist that the mere statement by the witness
that a sudden jerk was made in moving the iron rail
does not itself prove negligence. Such a statement is
nothing more than the opinion of the witness. Men may
and do differ about the character of the same act as to
whether a jerk were usual or unusual; and in this case
the plaintiff himself testifies that jerks of the same
sort were frequent in handling the rails in question and
that no complaint was made of them. This proves that
the jerk in question was a customary one.

The case of *Hunter* v. *Ingram-Day Lbr. Co.,* 110
Miss. 744, 70 So. 901, upon which appellant's counsel
seem confidently to rely, is not adverse to our conten-
tion. The opinion in that case delivered by Judge
POTTER distinctly recognizes the scope and effect of the
decision of this court in the Bradford Construction
Company case and does not disapprove it. Speaking
in that opinion of the Act of 1908, the opinion says:

"The intent and purpose of the Act of 1908, were to
extend to the employees of railroads other than com-
mercial railroads the same protection that it extended
by section 193 (of the Constitution) to certain classes
of employees of commercial railroads. In other words,
it was the intention of the legislature in passing this
act to put all employees employed in and about the
dangerous business of railroading into the same category
with reference to the fellow servant rule."

This is precisely the same as an affirmation that the
constitutional provision (Sec. 193) was not enlarged or
changed but its application simply extended to embrace
the employees of railroads (such as logging railroads)
other than commercial ones. So far the decision is in
appellee's favor and not against our contentions.

The opinion in the *Hunter-Ingram-Day* case then
proceeded to a statement of the kind of business in
which Hunter, the injured employee, was engaged at
the time of his injuries.    The lumber company was
found by the court to have been operating a railroad
equipped with engines and cars propelled by steam and
running on tracks and, in so far as the equipment was
concerned, it was certain that the lumber company's
outfit was such as is contemplated by the statute.
Hunter was injured while loading a car which was run
on tracks but the loading process itself was accom-
plished by the use of appliances propelled by the danger-
ous agency of steam.    The court having so found, af-
firmed that: ''The legislature, acting within its discre-
tion, has determined that all persons working in and
about the operation of railroad trains are engaged in a
hazardous business and are entitled to the protection
afforded by the statute in question.    All work in and
around the operation of railroad trains is necessarily
dangerous, whether that work has to do with the move-
ment of cars or the loading of same or any other em-
ployment in the operating department of the railroad.''

The first sentence in the last quotation, from the opin-
ion shows distinctly that the court had in mind the
operation of railroad trains, whether belonging to com-
mercial railroads or to logging railroads, and the last
sentence from the quotation was uttered in respect to
the same dangerous business.    Hunter was injured
while employed about a work which was being carried
on by steam power.    The appellant in this case was in-
jured in a work in which was not used either steam,
gas, gasolene, or lever power or any other power men-
tioned in the statute.    It would be to extend the statute
beyond its terms and, we say it with due respect, judicial
legislation, to hold that a case where hand power only
was used in the work is within the statute.

The court did not in the *Hunter-Ingram-Day* case decide any such a proposition and, while the language of Judge POTTER may be too broad, yet it must be interpreted in the light of the facts of the case before him. What Judge POTTER meant to say was that all work in and about the operation of railroad trains is necessarily dangerous when carried on by steam, gasolene, electric, etc., power. He did not mean to interpolate into the statute the words "hand power."

SMITH, C. J., delivered the opinion of the court.

Appellant instituted this suit to recover damages for an injury alleged to have been sustained by him while employed by appellee, because of the negligence of a fellow servant. At the close of the evidence a motion to exclude was sustained, and the jury instructed to find for appellee, and there was a verdict and judgment accordingly. According to this evidence, appellant, with the assistance of a number of fellow servants, was engaged in loading iron rails upon one of appellant's cars. These rails were being taken from an abandoned track, running from appellee's road to a quarry several miles away. While one of the rails was being placed in the car it was given an "unusual" or sudden jerk by some of appellant's fellow servants, which caused it to fall upon and injure his leg. Why this sudden or "unusual" jerk was given does not appear. There was no evidence of an engine being attached to the car at the time it was being loaded, or that it was to be moved by steam, electric, gas, gasolene, or lever power, other than the presumption arising that it was to be moved by appellee's usual motive power.

The peremptory instruction should not have been given, for the reason that the jury would have been warranted in finding that appellant was injured because of the negligence of a fellow servant, while engaged in

loading a car for transportation over appellee's railroad,. so that the case falls within chapter 194, Laws of 1908 (section 6684, Hemingway's Code), and is ruled by *Hunter* v. *Ingram-Day Lumber Co.*, 110 Miss. 744, 70 So. 901, and *Railroad Co.* v. *Pontius*, 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675.

*Reversed and remanded.*